IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JENNIFER AUDREY DIXON, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:23-cv-383-SDJ-KPJ |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | § § § | |
| Defendants. | § | |

**ORDER AND REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court are Plaintiff Jennifer Audrey Dixon's ("Plaintiff") Motion to Proceed In Forma Pauperis (the "IFP Motion") (Dkt. 3) and "Motion to Request a Temporary Restraining Order" (the "TRO Motion") (Dkt. 5). For the following reasons, the Court recommends the TRO Motion (Dkt. 5) be **DENIED**. The Court also finds the IFP Motion (Dkt. 3) is **DENIED AS MOOT**.

## I. BACKGROUND

On May 1, 2023, Plaintiff, proceeding *pro se*, filed a complaint against the Federal Bureau of Investigation ("FBI"), the "FBI TikTok Taskforce", and the "FBI Psychological Warfare Team" (together, "Defendants"). *See* Dkt. 1. In the complaint, Plaintiff alleges the FBI "sent a special taskforce to conduct a clan[d]estine operation with what appears to be the purpose of scoping [sic] me for national security concer[n]s, collecting dirt, and harassing me to intimidate me out of writing and publishing my fiction books." *Id.* at 4. Plaintiff alleges Defendants have "made many threats against [her] in the form of videos pushed to [her] on TikTok" and they have "also interfered directly with [her] life [through] three hoax assassination attempts." *Id.* Plaintiff alleges the "main reason for the assignation hoaxes was due to a grievance letter that I wrote to send to

1

my local FBI field office detailing their harassment toward me as well as revealing their entire clandestine operation on TikTok." *Id.* Plaintiff further asserts she was approached by an "FBI operative" on TikTok in January 2023, who was pretending to be Plaintiff's "girlfriend and soulmate" and messaging Plaintiff on Facebook messenger daily. *Id.* at 5. Plaintiff asserts the FBI operative began to say things that were implied threats to Plaintiff and her children. *See id.* Plaintiff asserts she contacted the FBI to report the FBI operative, who she alleges advised blocking the FBI operative. *See id.* Plaintiff asserts that after she contacted the FBI, the "taskforce" used "invasive surveillance tec[hniques]" to follow Plaintiff "inside stores and restaurants as well as having store security follow her . . . ." *Id.*

Plaintiff alleges "the Taskforce on the ground eventually backed down, but the operative continued to harass" Plaintiff with death threats. *Id.* at 4–5. Plaintiff asserts she spoke with FBI agent John Thomas in the Fort Worth, Texas field office and she "deduced from his questioning that the FBI's main concern was my master's thesis and my published and unpublishe[d] fiction books." *Id.* at 5. Plaintiff alleges the "Taskforce" was used to conduct three separate mock assassination attempts on Plaintiff in April 2023. *See id.* Plaintiff further asserts that a "psychological warfare team [was] working with the operative" and when Plaintiff tried to block them, they began "dropping [threatening] messages into my for you page." *Id.* at 7. Plaintiff then wrote a grievance to her local FBI field office, which allegedly prompted "a voll[e]y of threats from the operative and the psyops team." *Id.* Plaintiff asserts she was contacted by the operative and the "psyops team", warning Plaintiff of an "an attack on [Plaintiff's] house." *Id.* Plaintiff alleges the operative and "psyops team" showed her videos depicting radioactive powder being spread through her house and "a plane would kick up the wind" to spread the radioactive powder around the house. *Id.* Plaintiff "got [her] kids out before [the operative and psychological

2

operations team] said it would happen and was chased by the taskforce to the police station." *Id.* Plaintiff alleges she then mailed a grievance letter to the local FBI field office. *Id.*

Plaintiff asserts on April 27, 2023, she was warned by the "psyops team of an attack on [her] home" and the warning "was that planes would burn a hole through [her] roof and rain down radiation." *Id.* at 8. Plaintiff alleges she "starte[d] to feel an unexplained burning and heat sensation on [her] skin" and she "got [her] son up and [they] left the house." *Id.* Plaintiff alleges that "whenever [she] was driving with no cars around [her,] the plane flew lower [over her car]" and she "was able to get out of the [plane's] path by turning onto side roads." *Id.* Plaintiff asserts she drove to the federal courthouse in Sherman, Texas, and "ever[y]time [she] stopped," taskforce members would find her "[but] none made an attempt to stop [her]." *Id.* Plaintiff asserts she arrived at the Sherman, Texas federal courthouse around 9:00 a.m., but then drove to the library to do research and ultimately filed her paperwork in the federal courthouse in Plano, Texas. *See id.* at 8–9. Plaintiff asserts she then drove home at around 5:30 p.m., and at 7:30 p.m., planes and helicopters flew over her house, leading Plaintiff to flee her house again. *See id.* Plaintiff alleges she tried to check into a hotel, but a taskforce member "walked in, told the employee he was going to the room, which I knew to be next to mine" and she then left the hotel, as she did not feel safe. *Id.* at 9. Plaintiff asserts she contacted 911, as she was afraid she had radiation poisoning, but "some of the parame[d]ics appeared to be taskforce" as they "seeme[d] surprised when [she] said [she] file[d] [her] case in Plano and not Sherman." *Id.* at 10.

Plaintiff asserts she has been subject to "psychological harassment and torture," the FBI has tampered with her ability to earn income "by flooding CL [sic] fake ads for [her] product," "tampered with [her] printe[r] software to run out [her] ink," and "tampered with [her] vehicle to make it not start." *Id.* Plaintiff further asserts there is evidence that the FBI called businesses and

3

"possibly lawyers to ask them not to do business with [Plaintiff]." *Id.* Plaintiff asserts she has been targeted by the FBI because "one of [her] book plots is possibly too close to technology that may already exist." *Id.* Plaintiff finally alleges the FBI brought her psychological harm to both her and her children, and she has been compelled to have her thirteen year-old daughter live with her father "after the first hoax attack on [her] home." *Id.* at 11.

In support of her complaint, Plaintiff includes: a letter to the FBI's Fort Worth, Texas Field Office reporting her grievances as to this matter (Dkts. 1-1, 1-2); a U.S. Postal Service tracking receipt for the letter (Dkt. 1-3); Plaintiff's resume (Dkt. 1-4); Plaintiff's master thesis titled "Russian Insurgency on American Hearts and Minds" (Dkts. 1-5, 1-6); Plaintiff's statement asserting she did not have her master's thesis stored on a computer and she had a conversation with the FBI (Dkt. 1-7); and the civil cover sheet (Dkt. 1-8).

On May 4, 2023, Plaintiff filed a "Motion to File as Sealed" (Dkt. 4), which Plaintiff asserts is a description of her unpublished fiction book she alleges is the concern of the FBI. *See id.* at 1. Plaintiff alleges her fiction book involves a spherical holographic globe that can zoom into any location through cameras and global position systems, which a "cyber agent" uses to "show the dragon sire where to send the dragons." *Id.* at 2. Plaintiff provides additional facts as to the alleged harassment, including that hawks have been used to spread a powder blend of spices that causes a burning sensation. *See id.* at 5.

On May 10, 2023, Plaintiff filed the TRO Motion (Dkt. 5), wherein she requests a "restraining order due to receiving daily threats of violence from . . . Defendant since filing this case on 1 May 2023." *Id.* at 1. Plaintiff includes an attachment (Dkt. 5-1), wherein Plaintiff alleges additional attacks using the "burning spice," threatening messages from the "psyops team,"

4

feelings of heat emanating from her phone, and alleged attacks that occurred when she turned on her phone. *See id.* at 1–7.

## II.  LEGAL STANDARD

Injunctive relief is an extraordinary remedy that requires the applicant to unequivocally show the need for its issuance. *See Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). Courts in the Fifth Circuit have made clear that temporary restraining orders and preliminary injunctions constitute "extraordinary and drastic remed[ies]," which are "not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir.1985)); *see also Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999) ("Temporary restraining orders and preliminary injunctions are extraordinary relief and rarely issued.").

To obtain such relief, a party seeking a temporary restraining order ("TRO") and/or preliminary injunction must demonstrate: (1) a substantial likelihood of success on the merits; (2) a likelihood the movant will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor, and (4) an injunction is in the public interest. *See Tex. Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 21 (2008)). The movant has the burden of introducing sufficient evidence to justify the granting of a preliminary injunction or temporary restraining order. *See PCI Transp., Inc. v. Fort Worth & Western R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005). Injunctive relief "should only be granted if the movant has clearly carried his burden of persuasion on all four factors." *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 681 (N.D. Tex. 2015) (citing *Mississippi Power & Light v. United Gas Pipe Line Co.*, 760 F.2d 618,

621 (5th Cir. 1985)). The decision to grant or deny an injunction is "left to the sound discretion of the district court." *Id.*

### III.   ANALYSIS

The Court first notes that Plaintiff filed the IFP Motion (Dkt. 3) on May 1, 2023. However, prior to the Court's ruling on the IFP Motion, Plaintiff subsequently paid the filing fee and issued summonses as to Defendants, rendering the IFP Motion (Dkt. 3) moot. Accordingly, the Court does not analyze Plaintiff's allegations pursuant to 28 U.S.C. § 1915, which is used to review and dismiss complaints filed *in forma pauperis* if they are frivolous, malicious, or fail to state a claim on which relief can be granted.

There is some authority within the Fifth Circuit for the proposition that courts may *sua sponte* dismiss a complaint as frivolous or malicious where the plaintiff is not proceeding *in forma pauperis*. *See Pope v. Mountcastle Mortg. Corp.*, No. 3-11-CV-1689-B, 2011 WL 4986927, at *1 (N.D. Tex. Oct. 18, 2011) (collecting cases); *Est. of Hamilton v. Trump*, No. 1:20-CV-266, 2020 WL 5499329, at *2 (E.D. Tex. Aug. 24, 2020), *R. & R. adopted*, 2020 WL 5439284 (E.D. Tex. Sept. 9, 2020) (same); *Smith v. Osborne*, No. 4:18-CV-906-ALM-CAN, 2019 WL 4383337, at *3 n.8 (E.D. Tex. Aug. 18, 2019), *R. & R. adopted*, 2019 WL 4345735 (E.D. Tex. Sept. 12, 2019) (same); *Benavides v. Trump*, No. SA19CA440DAEHJB, 2019 WL 8273464, at *2 (W.D. Tex. Nov. 21, 2019), *R. & R. adopted sub nom. Benavides v. United States*, 2019 WL 8273463 (W.D. Tex. Dec. 9, 2019), *aff'd sub nom. Benavides v. Barr*, 797 F. App'x 886 (5th Cir. 2020) (same). The Supreme Court has not addressed this issue directly, but rather has implied in passing that courts have such authority. *See Mallard v. U.S. Dist. Court*, 490 U.S. 296, 307–08 (1989) ("Statutory provisions may simply codify existing rights or powers. Section 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would

have power to do so even in the absence of this statutory provision."). The Fifth Circuit does not appear to have addressed the issue, however, several of her sister circuits have held that courts have the inherent authority to dismiss "frivolous" or "malicious" claims. *See Fitzgerald v. first East Seventh Street Tenants*, 221 F.3d 362, 363–64 (2d Cir. 2000); *Ferguson v. Wooton*, 741 F. App'x 955, 955 (4th Cir. 2018) ("Frivolous complaint are subject to dismissal pursuant to the district court's inherent authority, even when the plaintiff has paid the filing fee."); *Williams v. Madden*, 9 F. App'x 996, 997 n.1 (10th Cir. 2001) (same); *Cuyler v. Aurora Loan Servs.*, LLC, No. 12-11824-DD, 2012 WL 10488184, at *2 (11th Cir. Dec. 3, 2012) (same).

As the Fifth Circuit has not yet addressed the issue, the Court takes caution as to dismissal, as Plaintiff is proceeding *pro se* and has not yet had an opportunity to amend her complaint. *See Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam) ("Generally a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend."). However, there does not appear to be any such bar to considering the fantastical nature of Plaintiff's claims as to her request for injunctive relief.

Plaintiff alleges the FBI, the "FBI TikTok taskforce", and the "FBI psyops team" have been targeting her due to the draft of her unpublished fiction novel and have been using planes to fire radiation at her or at least make her fearful that such radiation will be fired at her. Although Plaintiff's allegations "may be real to Plaintiff, a reasonable person would find them to be so delusional as to be wholly incredible." *Valadez v. Whipple*, No. 7:20-MC-1220, 2021 WL 8016842, at *2 (S.D. Tex. Jan. 12, 2021), *R. & R. adopted*, 2021 WL 243859 (S.D. Tex. Jan. 25, 2021) (collecting cases). As such, Plaintiff's factual allegations lack an arguable basis in fact because they are based on a fantastical or delusional scenario. *See Simmons v. Payne*, 170 F. App'x 906, 907 (5th Cir. 2006) (per curiam) ("The district court found that [the plaintiff's] assertion of a

vast conspiracy by all levels of the state government and federal government was manifestly frivolous because the factual allegations were fanciful, irrational, incredible, and delusional." (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989))); *Deng v. Fed. Bureau of Investigation Agencies*, No. 2:20-CV-154, 2021 WL 742297, at *2 (N.D. Tex. Jan. 26, 2021), *R. & R. adopted*, 2021 WL 735207 (N.D. Tex. Feb. 25, 2021), *aff'd*, 850 F. App'x 323 (5th Cir. 2021) ("Here, [the plaintiff's] claims that the FBI has targeted him before his birth to frame him, steal his thoughts, record his voice, implant a microchip in his knee, or otherwise stalk him are clearly delusional."); *Smith*, 2019 WL 4383337, at *3 (finding the plaintiff's claims did not have an arguable basis in fact because the plaintiff raised claims that "his neighbors, coworkers, and various federal agencies and officials have developed technology to direct radiation towards [the plaintiff's] residence to 'cook' [the plaintiff] and his family . . . ."). As Plaintiff's allegations do not have an arguable basis in fact, there is no substantial likelihood of success on the merits. *See Valadez*, 2021 WL 8016842, at *3. When there is no arguable basis in fact, the other factors similarly evince against granting a TRO.

Accordingly, the Court recommends denying Plaintiff's request for a temporary restraining order because Plaintiff's claims are frivolous.

## IV. RECOMMENDATION

For the foregoing reasons, the Court recommends the TRO Motion (Dkt. 5) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written

objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

## V.     ORDER

**IT IS ORDERED** that the IFP Motion (Dkt. 3) is **DENIED AS MOOT**.

**So ORDERED and SIGNED this 15th day of May, 2023.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE