IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JENNIFER AUDREY DIXON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-383-SDJ-KPJ |
| | § | |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**AMENDED REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Federal Bureau of Investigation's (the "FBI") Motion to Dismiss (Dkt. 13). Plaintiff Jennifer Audrey Dixon ("Plaintiff") did not file a response. For the reasons that follow, the Court recommends that the Motion to Dismiss (Dkt. 13) be **GRANTED**.

## I.   BACKGROUND

**A.   Factual Allegations**

On May 1, 2023, Plaintiff, proceeding *pro se*, filed a complaint (the "Complaint") (Dkt. 1)[1] against the FBI, as well as the "FBI TikTok Taskforce" and the "FBI Psychological Warfare Team" (collectively, "Defendants"). *See* Dkt. 1. In the Complaint (Dkt. 1), Plaintiff alleges that the FBI "sent a special taskforce to conduct a clan[d]estine operation with what appears to be the purpose of scoping [sic] [her] for national security concer[n]s, collecting dirt, and harassing [her] to intimidate [her] out of writing and publishing [her] fiction books." *Id.* at 4. Plaintiff alleges

---

[1] The Complaint (Dkt. 1) is comprised of several pages of hand-written allegations, all of which are in capital letters. For the sake of readability, all quotations follow an ordinary capitalization scheme.

Defendants have "made many threats against [her] in the form of videos pushed to [her] on TikTok," and they have "also interfered directly with [her] life [through] . . . three hoax assassination attempts." *Id.*

Plaintiff alleges that the "main reason for the assassination hoaxes was due to a grievance letter that [she] wrote to send to [the] local FBI field office detailing their harassment toward [her] as well as revealing their entire clandestine operation on TikTok." *Id.* Plaintiff further asserts that she was approached by an "FBI operative" on TikTok in January 2023, who was pretending to be her "girlfriend and soulmate." *Id.* at 5. Plaintiff asserts the FBI operative began to make implicit threats to Plaintiff and her children. *See id.* Plaintiff asserts she contacted the FBI to report the FBI operative, which advised her to block the user. *See id.* Plaintiff further asserts that, after she contacted the FBI, the "taskforce" used "invasive surveillance tec[hniques]" to follow Plaintiff "inside stores and restaurants as well as having store security follow [her]." *Id.*

Plaintiff alleges "the taskforce . . . eventually backed down, but the operative continued to harass" Plaintiff with death threats. *Id.* at 5–6. Plaintiff asserts she spoke with FBI agent John Thomas in the Fort Worth, Texas field office, and she "deduced from his questioning that the FBI's main concern was [her] master's thesis and [her] published and unpublishe[d] fiction books." *Id.* at 6. Plaintiff alleges that, in April 2023, the "taskforce" conducted "three separate mock assassination attempts on [her]." *See id.* Plaintiff further asserts that a "psychological warfare team [was] working with the operative" and, when Plaintiff tried to block them, they began "dropping [threatening] messages into [her] for-you page." *Id.* at 7. Plaintiff then wrote a grievance to her local FBI field office, which allegedly prompted "a voll[e]y of threats from the operative and the psyops team." *Id.* Plaintiff asserts she was contacted by the operative and the "psyops team," warning Plaintiff of an "an attack on [her] house." *Id.* Plaintiff alleges the operative and "psyops

2

team" showed her videos depicting radioactive powder being spread through her house. *Id.* Plaintiff "got [her] kids out before [the operatives] said it would happen and was chased by the taskforce to the police station." *Id.* Plaintiff alleges she mailed a grievance letter to the local FBI field office on April 24, 2023. *Id.*

Plaintiff further alleges that on April 27, 2023, she was warned by the "psyops team of an attack on [her] home," advising "that planes would burn a hole through [her] roof and rain down radiation." *Id.* at 8. Plaintiff alleges that she "starte[d] to feel an unexplained burning and heat sensation on [her] skin," so she "got [her] son up and [they] left the house." *Id.* Plaintiff alleges that, "whenever [she] was driving with no cars around [her,] the plane flew low[er] [over her car,]" and she "was able to get out of the [plane's] path by turning onto side roads." *Id.* Plaintiff asserts she then drove to the federal courthouse in Sherman, Texas, and "ever[y]time [she] stopped," taskforce members would find her "[but] none made an attempt to stop [her]." *Id.* Plaintiff asserts she arrived at the Paul Brown United States Courthouse in Sherman, Texas around 9:00 a.m., but then drove to the library to do research and ultimately filed her paperwork in the United States Courthouse in Plano, Texas. *See id.* at 8–9. Plaintiff alleges she drove home at around 5:30 p.m., and at 7:30 p.m., planes and helicopters began flying over her house, leading Plaintiff to flee once again. *See id.* Plaintiff alleges she tried to check into a hotel, but a taskforce member arrived and "told the [hotel] employee [that] he was going to [his] room, which [she] knew to be next to [her room]." *Id.* As Plaintiff no longer felt safe, she left the hotel. *Id.* at 9. Plaintiff asserts she dialed 911, as she was afraid that she had radiation poisoning, but "some of the parame[d]ics appeared to be taskforce [operatives]," as they "seeme[d] surprised when [she] said [she] file[d] [her] case in Plano and not Sherman." *Id.* at 10.

Plaintiff asserts she has been subject to "psychological harassment and torture," the FBI has tampered with her ability to earn income "by flooding CL [sic] fake ads for [her] product," "tampered with [her] printe[r] software to run out [her] ink," and "tampered with [her] vehicle to make it not start." *Id.* Plaintiff further asserts there is evidence that the FBI called businesses and "possibly lawyers to ask them not to do business with [her]." *Id.* Plaintiff asserts she has been targeted by the FBI because "one of [her] book plots is possibly too close to technology that may already exist." *Id.* Plaintiff finally alleges that the FBI brought psychological harm upon her and her children, and she has been compelled to have her thirteen-year-old daughter live with her father "after the first hoax attack on [her] home." *Id.* at 11. Based on these allegations, Plaintiff alleges that she suffered "psychological harm," "lost income, livestock, and a vehicle," and "incurred medical bills." *Id.*

In support of her complaint, Plaintiff includes, among other attachments, a copy of her master's thesis, entitled *Russian Insurgency on American Hearts and Minds*. Dkts. 1-5–1-6. Plaintiff contends that her thesis demonstrates one basis for why the FBI is targeting her. *See* Dkt. 1-7.

On May 4, 2023, Plaintiff filed a Motion to File as Sealed (Dkt. 4), wherein Plaintiff describes a fiction book she is writing. *See* Dkt. 4 at 1. Just like her master's thesis, Plaintiff believes this book made her an FBI target. *Id.* According to Plaintiff, her book involves a spherical holographic globe that can zoom into any location through cameras and global positioning systems, which a "cyber agent" uses to "show the dragon sire where to send the dragons." *Id.* at 2. In the Motion to File as Sealed (Dkt. 4), Plaintiff provides additional facts as to the alleged harassment, including that hawks have been used to spread a blend of spices that cause a burning sensation. *See id.* at 5.

B.     **Procedural History**

On May 10, 2023, Plaintiff filed the Motion to Request a Temporary Restraining Order Against the Defendant (the "TRO Motion) (Dkt. 5), wherein she requested a "restraining order due to receiving daily threats of violence from . . . [the FBI] since filing this case." Dkt. 5. On May 15, 2023, the Court issued a Report and Recommendation (Dkt. 9), which recommended that the TRO Motion (Dkt. 5) be denied because Plaintiff had not demonstrated a substantial likelihood of success on the merits. *See* Dkt. 9 at 8. On December 29, 2023, a Memorandum Adopting the Report and Recommendation (Dkt. 15) was issued, which denied the TRO Motion (Dkt. 5). *See* Dkt. 15 at 2. On July 24, 2023, the FBI filed the Motion to Dismiss (Dkt. 13). Plaintiff did not file a response.

II.     **LEGAL ANALYSIS**

In the Motion to Dismiss (Dkt. 13), the FBI assumes, without explanation, that Plaintiff's claims are governed by the Federal Tort Claims Act (the "FTCA"). *See* Dkt. 13 at 7–8. Based on this conclusion, the FBI argues that Plaintiff failed to exhaust her administrative remedies under the FTCA. *See id.* at 8. In the alternative, the FBI argues that Plaintiff's allegations are wholly fantastical and delusional and, as such, each claim should be dismissed for failing to state a claim upon which relief can be granted. *See id.* at 9. The Court agrees with the FBI and concludes that it lacks subject matter jurisdiction over Plaintiff's claims.

A.     **Sovereign Immunity**

The United States, as the sovereign, is generally "immune from suit." *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994) (first citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); and then citing *McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993)). Such immunity also "extends to agencies of the United States." *Wages & White Lion Invs., L.L.C. v. U.S. Food & Drug*

*Admin.*, 16 F.4th 1130, 1142 (5th Cir. 2021) (quoting *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013)); *see Meyer*, 510 U.S. at 475 (citations omitted). "Sovereign immunity bars not only suits against the Federal Government seeking monetary relief, but also actions seeking injunctive relief." *City of Alexandria v. F.E.M.A.*, 781 F. Supp. 2d 340, 346 (W.D. La. 2011) (citing *Dugan v. Rank*, 372 U.S. 609, 620 (1963)).

"Sovereign immunity is jurisdictional" and "may be raised at any time." *Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002) (citations omitted). Absent waiver, "the government is immune from suit, and there is no subject matter jurisdiction to hear [the] case." *Truman*, 26 F.3d at 594 (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). As the party asserting federal jurisdiction, the plaintiff bears the burden of "showing Congress's unequivocal waiver of sovereign immunity." *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009) (quoting *St. Tammany Par. ex rel. Davis v. F.E.M.A.*, 556 F.3d 307, 315 (5th Cir. 2009)).

In the present case, Plaintiff asserts claims against the FBI—a federal agency. Plaintiff also asserts claims against the "FBI TikTok Taskforce" and the "FBI Psychological Warfare Team," which are purportedly subdivisions of the FBI. *See* Dkt. 1 at 1, 3–4. However, Plaintiff fails to demonstrate "any waiver of sovereign immunity that would allow her to sue the FBI, a federal agency." *See, e.g.*, *Henderson v. F.B.I.*, No. 21-cv-320, 2021 WL 1379519, at *2 (N.D. Tex. Mar. 18, 2021) (citing *Warren v. Fed. Bureau Agency*, No. 19-2374, 2019 WL 6686400, at *1 (S.D. Tex. Nov. 12, 2019), *R. & R. adopted*, 2019 WL 6683148 (S.D. Tex. Dec. 6, 2019)), *R. & R. adopted*, 2021 WL 1378771 (N.D. Tex. Apr. 12, 2021). Indeed, at no point does Plaintiff identify any waiver of sovereign immunity whatsoever. *See* Dkt. 1. Such a failure leaves the Court without subject matter jurisdiction over Plaintiff's claims. *See id.*; *Laster v. Boyle*, No. 21-cv-2525, 2022

WL 4086782, at *5 (N.D. Tex. Aug. 4, 2022) ("But [the plaintiff] has not identified any consent or waiver of sovereign immunity that would allow him to sue the FBI for monetary damages, so [the plaintiff's] claims against the FBI for monetary damages must be dismissed without prejudice for lack of subject-matter jurisdiction." (citing *Henderson*, 2021 WL 1379519, at *2)), *R. & R. adopted*, 2022 WL 4084429 (N.D. Tex. Sept. 6, 2022). Thus, Plaintiff's claims should be dismissed without prejudice for lack of subject matter jurisdiction.

**B.     The FTCA**

"The FTCA grants a limited waiver of sovereign immunity and allows tort claims against the United States 'in the same manner and to the same extent as a private individual under like circumstances.'" *Willoughby v. United States ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013) (quoting 28 U.S.C. § 2674). The FTCA is "the exclusive remedy for suits against the United States . . . sounding in tort." *Id.* (citing 28 U.S.C. § 2679(a)). However, the FTCA expressly declines to waive sovereign immunity for several intentional torts, except "with regard to acts or omissions of investigative or law enforcement officers of the United States Government . . . arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h). An "investigative or law enforcement officer" is "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*

In the present case, Plaintiff fails to identify her claims by name. *See* Dkt. 1. However, Plaintiff indicates that her claims are "TORTS." *See* Dkt. 1-8 at 1. In addition, Plaintiff alleges that FBI agents repeatedly threatened and attacked her and that, because of their conduct, she suffered "psychological harm," "lost income, livestock, and a vehicle," and "incurred medical bills." *See* Dkt. 1 at 5–6, 11. Construed liberally, Plaintiff appears to assert assault and battery claims. The

7

United States has waived sovereign immunity for such "acts or omissions," so long as they were committed by "investigative or law enforcement officers." *See* 28 U.S.C. § 2680(h). An FBI agent qualifies as such. *See, e.g.*, *Brown v. United States*, 653 F.2d 196, 198 (5th Cir. Unit A Aug. 1981) ("Because, as the government has conceded, [the FBI agent] was an 'investigative officer,' [the plaintiff's intentional tort] claim was properly brought under the [FTCA]."); *Camacho v. Cannella*, No. 12-cv-40, 2012 WL 3719749, at *11 (W.D. Tex. Aug. 27, 2012) (finding the law enforcement proviso covered the conduct of an FBI agent). Thus, Plaintiff's claims are governed by the FTCA.

1. **Improper Parties**

"The FTCA vests district courts with 'exclusive jurisdiction of civil actions on claims against the United States, for money damages.'" *Nguyen v. U.S.P.S.*, No. 23-30547, 2024 WL 655578, at *1 (5th Cir. Feb. 16, 2024) (per curiam) (quoting 28 U.S.C. § 1346(b)(1)). Therefore, "[a]ll suits brought under the FTCA must be brought against the United States"—not its agencies. *See Atorie Air, Inc. v. F.A.A.*, 942 F.2d 954, 957 (5th Cir. 1991) (citing *Vernell ex rel. Vernell v. U.S.P.S.*, 819 F.2d 108, 109 (5th Cir. 1987), *superseded on other grounds by* FED. R. CIV. P. 15(c)); *Nguyen*, 2024 WL 655578, at *1 ("Thus, '[t]he United States, and not the agency itself, is the proper defendant in an FTCA action.'" (alteration in original) (quoting *Farmer v. La. Elec. & Fin. Crimes Task Force*, 553 F. App'x 386, 388–89 (5th Cir. 2014))). District courts lack jurisdiction over FTCA claims brought against any defendant other than the United States. *See Nguyen*, 2024 WL 655578, at *1 (citing *Galvin v. O.S.H.A.*, 860 F.2d 181, 183 (5th Cir. 1988)).

In the present case, Plaintiff names three defendants: the FBI, the "FBI TikTok Taskforce," and the "FBI Psychological Warfare Team." Dkt. 1 at 1. As none of these parties are the United States, the Court lacks subject matter jurisdiction over Plaintiff's claims against them. *See Nguyen*, 2024 WL 655578, at *1 (citing *Galvin*, 860 F.2d at 183); *Henderson*, 2021 WL 1379519, at *2

8

("Here, because [the plaintiff's] FTCA claim is a claim against [the FBI], and not the United States, it must be dismissed." (citing *Esquivel-Solis v. United States*, 472 F. App'x 338, 339 (5th Cir. 2012) (per curiam))). Thus, Plaintiff's claims should be dismissed without prejudice for lack of subject matter jurisdiction.

### 2. Administrative Exhaustion

Under the FTCA, "[a]n action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and [her] claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). If the agency fails to act within six months after being presented with the claim, it may be deemed denied "at the option of the claimant any time thereafter." *Id.* "In other words, a claimant exhausts [her] administrative remedies under the FTCA by presenting [her] claim to the appropriate federal agency and obtaining a written notice of denial of the claim or awaiting the passage of six months without a final disposition." *See Madrid v. United States*, No. 22-cv-982, 2023 WL 8435244, at *12 (N.D. Tex. Dec. 5, 2023) (citations omitted).

"Presentment to an appropriate federal agency under the FTCA requires a claimant to: (1) give the agency written notice of . . . her claim sufficient to enable the agency to investigate; and (2) place a value o[n] . . . her claim." *E.g.*, *Hankerd v. F.B.I.*, No. 18-cv-204, 2019 WL 2484287, at *3 (E.D. Tex. Mar. 8, 2019) (citing *Frantz v. United States*, 29 F.3d 222, 224 (5th Cir. 1994)). A failure to sufficiently allege administrative exhaustion deprives the court of subject matter jurisdiction. *See, e.g.*, *Nguyen*, 2024 WL 655578, at *1.

In the present case, Plaintiff alleges that she mailed a "grievance to [the] local FBI field office" on April 24, 2023. *See* Dkt. 1 at 7. On May 1, 2023, exactly one week later, Plaintiff initiated this lawsuit. *See id.* at 11. Even assuming Plaintiff's grievance sufficiently presented her

9

claim to the FBI,[2] Plaintiff does not allege that the FBI denied her claim. *See* Dkt. 1. Furthermore, because Plaintiff filed suit shortly after mailing her grievance, her claim could not be deemed denied based on the passage of sixth months without a final disposition. *See* 28 U.S.C. § 2675(a). Accordingly, Plaintiff failed to exhaust her administrative remedies. *See, e.g.*, *Brown v. United States*, No. 23-cv-122, 2023 WL 7166825, at *3 (S.D. Tex. Oct. 31, 2023) ("There is no wiggle room. A plaintiff cannot commence a lawsuit under the FTCA 'unless the plaintiff has filed an administrative claim and either obtained a written denial or waited six months.'" (quoting *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995))), *R. & R. adopted*, 2023 WL 8480065 (S.D. Tex. Dec. 7, 2023). Thus, Plaintiff's claims should be dismissed without prejudice for lack of subject matter jurisdiction.

### C.      Failure to State a Claim

"A court has no obligation to accept the factual allegations in a complaint that are fanciful, fantastic, or delusional." *Diaz v. Abbott*, 706 F. App'x 205, 206 (5th Cir. 2017) (per curiam) (citing *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)). "While *pro se* plaintiffs are given some latitude at the pleading stage, their status does not offer them 'an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" *Johnson v. Zuckerberg*, No. 17-cv-261, 2017 WL 5468295, at *1 (E.D. Tex. Oct. 10, 2017) (quoting *Farguson v. MBank Hous. N.A.*, 808 F.2d 358, 359 (5th Cir. 1986)), *R. & R. adopted*, 2017 WL 5257043 (E.D. Tex. Nov. 9, 2017).

In the present case, Plaintiff's allegations, "even when liberally construed, completely fail[] to plead anything close to a plausible claim for relief." *Curtis v. Kunz-Freed*, No. 16-cv-1969, 2017

---

[2] As the FBI points out, FTCA claims are usually initiated by filing a Standard Form 95 ("SF-95") with the appropriate administrative agency. *See* Dkt. 13 at 8 ("[Plaintiff] also fails to attach a SF-95 or other similar documentation."). Because Plaintiff did not append her grievance form, it is unclear whether its contents satisfactorily apprised the FBI of her claims.

10

WL 7371194, at *2 (S.D. Tex. May 16, 2017). Instead, Plaintiff's "allegations cannot be characterized as anything more than fanciful, fantastic, and delusional." *Id.* Thus, the Court need not accept them as true. *See, e.g.*, *Hess v. Texas*, No. 22-cv-61, 2022 WL 4292967, at *3 n.2 (S.D. Tex. June 1, 2022) ("The Court views the allegations in the complaint largely as fantastical and delusional, for which reason, it is under no obligation to accept such claims as true." (citing *Diaz*, 706 F. App'x at 206)). "Although these claims may be real to Plaintiff, a reasonable person would find them to be so delusional as to be wholly incredible." *Valadez v. Whipple*, No. 20-mc-1220, 2021 WL 8016842, at *2 (S.D. Tex. Jan. 12, 2021) (collecting cases), *R. & R. adopted*, 2021 WL 243859 (S.D. Tex. Jan. 25, 2021). Thus, even if the Court had subject matter jurisdiction, Plaintiff's claims could be dismissed on this ground.

## IV. RECOMMENDATION

For the foregoing reasons, the Court recommends that the Motion to Dismiss (Dkt. 13) be **GRANTED**, and Plaintiff's claims against the FBI, the "FBI TikTok Taskforce," and the "FBI Psychological Warfare Team" be **DISMISSED WITHOUT PREJUDICE**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*,

474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 17th day of March, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE